IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KEENAN KELLEY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION FILE |
| v. | : | |
| | : | NO._____ |
| CHEBAT MANAGEMENT | : | |
| GROUP, LLC, | : | |
| | : | |
| CHECK SYSTEMS | : | |
| RECOVERY, LLC, | : | |
| | : | |
| CHEBAT FINANCIAL | : | |
| GROUP, LLC, and | : | |
| | : | |
| JOHN H. CHEBAT, | : | |
| a/k/a "Johnny Chebat," | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**COMPLAINT FOR DAMAGES**

**INTRODUCTION**

1.     This is an action for damages against the Defendants for violations of the

Federal Fair Debt Collection Practices Act [FDCPA], 15 U.S.C. §§ 1692 et

seq., and the Georgia Fair Business Practices Act [GaFBPA], O.C.G.A. §§

10-1-390  et seq.

## SUBJECT MATTER JURISDICTION

2.      Subject matter jurisdiction in this Court is proper pursuant to 15 U.S.C. §

1692k(d) and 28 U.S.C. § 1331 and 1337 (federal question jurisdiction).

3.      This court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear

Plaintiff's state law claims as they are so related to Plaintiff's federal

question claim that they form part of the same case or controversy.

4.      Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).


## PARTIES AND PERSONAL JURISDICTION

5.      Plaintiff is a resident of this State, District and Division and is authorized by

law to bring this action.

6.      Defendant CHEBAT MANAGEMENT GROUP, LLC [hereinafter

"CHEBAT MANAGEMENT"] is a limited liability company organized

under the laws of the State of New York.

7.      CHEBAT MANAGEMENT is subject to the jurisdiction and venue of this

Court.

8.      CHEBAT MANAGEMENT may be served by personal service upon its

authorized officer or agent at its principal place of business, to wit: 495

Commerce Drive, Suite 2, Amherst, New York 14228, or wherever said

officer or agent may be found.

9.      In the alternative, CHEBAT MANAGEMENT may be served by personal

service upon its authorized agent at its process address on file with the New

York Department of State, to wit: Phillips Lytle LLP, 3400 HSBC Center,

Buffalo, New York 14203.

10.     CHECK SYSTEMS RECOVERY, LLC [hereinafter "CHECK SYSTEMS"]

is a limited liability company organized under the laws of the State of New

York.

11.     CHECK SYSTEMS is subject to the jurisdiction and venue of this Court.

12.     CHECK SYSTEMS may be served by personal service upon its authorized

officer or agent at its principal place of business (which is also the process

address on file with the New York Department of State), to wit: 495

Commerce Drive, Suite 2, Amherst, New York 14228, or wherever said

officer or agent may be found.

13.     Defendant CHEBAT FINANCIAL GROUP, LLC [hereinafter "CHEBAT

FINANCIAL"] is a limited liability company organized under the laws of

the State of New York.

14.  CHEBAT FINANCIAL is subject to the jurisdiction and venue of this
     Court.

15.  CHEBAT FINANCIAL may be served by personal service upon its
     authorized officer or agent at its principal place of business, to wit: 495
     Commerce Drive, Suite 2, Amherst, New York 14228, or wherever said
     officer or agent may be found.

16.  In the alternative, CHEBAT FINANCIAL may be served by personal
     service upon its authorized agent at its process address on file with the New
     York Department of State, to wit: Phillips Lytle LLP, 3400 HSBC Center,
     Buffalo, New York 14203.

17.  Defendant JOHN H. CHEBAT is an individual also sometimes known as
     "Johnny Chebat." [Hereinafter, said Defendant is referred to as
     "CHEBAT."]

18.  CHEBAT is associated with the named business entity Defendants and
     exercises control over the named business entity and other related business
     entities.

19.  CHEBAT is subject to the jurisdiction and venue of this Court.

20. CHEBAT may be served by personal service at his place of residence, or at his principal place of business, to wit: 495 Commerce Drive, Suite 2, Amherst, New York 14228, or wherever he may be found.

21. Each of the Defendants meets the definition of a debt collector as defined by the FDCPA, 15 U.S.C. § 1692a.

22. Defendants acquire and collect debts owned by residents of the entire United States, and specifically, the State of Georgia.

23. Defendants perform collection of debts throughout the entire United States, and specifically, the State of Georgia.

24. Defendants transact business in this State.

25. Defendants transactions in this State give rise to the Plaintiff's Causes of Action.

26. Defendants regularly engage in telephone collection activities directed to consumers in the State of Georgia.

27. In the course of their business, Defendants directed telephone calls to Plaintiff's in the State of Georgia.

28. Other Defendants may be discovered in the course of litigation, and plaintiff respectfully prays that the Court will permit the addition of later discovered parties upon motion.

29.   Alternatively, all Defendants may be served by personal or substitute

service pursuant to the Federal Rules of Civil Procedure and, as applicable,

the laws of the several states.


## FACTS COMMON TO ALL CAUSES

30.   Defendants use the mails in the operation of their business.

31.   Defendants use telephone communications in their business.

32.   The principle purpose of Defendants' business is the collection of debts.

33.   Defendants regularly collect or attempt to collect debts owed or due, or

asserted to be owed or due, another.

34.   Defendants regularly collect or attempt to collect debts which were in

default at the time that they were assigned said debts.

35.   In a collection call by an agent of the Defendants, the Defendants' telephone

collector represented that the caller worked for "CSR," i.e., the initials for

Defendant CHECK SYSTEMS RECOVERY, LLC.

36.   In a collection call by an agent of the Defendants, the Defendants' telephone

collector specifically represented that the defaulted debt had been purchased

by "Chebat Management" and that "CSR" was working for "Chebat

Management."

37. In a collection call by an agent of the Defendants, the Defendants' telephone collector specifically represented that "Chebat Management" had purchased the defaulted debt from "National Credit Adjusters."

38. National Credit Adjusters, LLC is a company that acquires and re-sells payday loan accounts.

39. Notwithstanding the representation that the defaulted debt had been purchased by "Chebat Management," CHEBAT FINANCIAL is the debtor listed on numerous UCC-1 financing statements which list as collateral "accounts of consumer debt purchased from National Credit Adjuster, LLC," or words to that effect.

40. The Defendants are debt collectors subject to the provisions of the Fair Debt Collection Practices Act.

41. The alleged indebtedness which Defendants attempted to collect from Plaintiff arose from an Internet payday loan.

42. Said payday loan was not incurred for any business or commercial purpose.

43. Said payday loan was incurred to pay the pressing personal and household needs of Plaintiff.

44. The payday loan sought to collect interest at an annual interest rate in excess of that allowed by any applicable state law.

45.    This alleged indebtedness is illegal and unenforceable under applicable state law.

46.    Any attempt to collect this illegal and unenforceable debt is a violation of the FDCPA.

47.    In self-promotional on-line postings, CHEBAT states that

> John Chebat is the CEO of WNYC, which is headquartered in Amherst, New York. He is the executive leader of a number of corporate LLCs: Chebat Financial Group, Account Discovery Systems, Chebat Asset Management, Chebat Management Group. Account Discovery Systems LLC is a collection agency which handled $25 million yearly. The strategic direction and leading operations of these companies fall under the duties of John Chebat. This means he is expected to assist in many capacities, but he is held accountable by the results that the company reaps. His oversight encompasses around 150 employees in total.

http://johnchebat.professionalwhois.com/ (last accessed 2/27/2013).

48.     In another self-promotional, on-line posting, CHEBAT states:

> John Chebat is a highly trained and knowledgeable
>
> professional who works in the industry of bill collection
>
> services. John Chebat is the CEO of a conglomerate of
>
> Chebat industries, actually, heading up four companies.
>
> He is known for his ability to lead companies to success.

http://johnchebat.corpdatagroup.com/ (last accessed 2/27/2013).

49.     On another on-line posting, CHEBAT states of his business:

> After a good start to the new year, we are really starting
>
> to switch gears here at Chebat.

http://chebatman.com/news/?p=302 (posted 3/14/2012, last accessed
2/27/2013).

50.     It appears from various records of the State of New York, that CHEBAT
actually operates at least ten different interrelated business entities from his
principle place of business in or near Amherst, New York.

51.     CHEBAT and six of his business entities (including CHECK SYSTEMS)
are subject to an agreement with the New York Attorney General to cease
abusive collection practices.

52.    It appears that CHEBAT does not respect the separateness of the corporate entities, and that some or all of the business entities operated by CHEBAT are merely corporate shells intended to delay and defraud those, such as Plaintiff, who have valid claims.

53.    The allegation of the preceding paragraph is likely to have evidentiary support based upon the large number of business entities operated from CHEBAT's disclosed office location, CHEBAT's reference to himself as the "the CEO of a conglomerate of Chebat industries," CHEBAT's reference to the numerous business entities simply by his own name ("Chebat"), the on-line references on sites controlled by CHEBAT MANAGEMENT to employees of the "Chebat Organization" without distinguishing the business entity that actually employs them, the fact that CHEBAT FINANCIAL undertakes to grant security interests in property "owned, or purchased in the future, by Borrower [i.e., CHEBAT FINANCIAL] or Its Affiliates," and the fact that CHEBAT has allowed litigation against CHECK SYSTEMS to go into default notwithstanding apparently valid service.

54.   The individual defendant actively participates in the debt collection operations of CHEBAT MANAGEMENT, CHEBAT FINANCIAL and CHECK SYSTEMS.

55.   The individual defendant directly participated by creating, organizing, structuring, operating and directing the business operations of CHEBAT MANAGEMENT, CHEBAT FINANCIAL and CHECK SYSTEMS, as well as other related business entities.

56.   Corporate forms should not protect the individual defendant or related entities from responsibility for the continuing wrongdoings which were perpetrated in the name of the business entities which he controls.

57.   The Defendants engaged in an abusive campaign of telephone collection directed to Plaintiff.

58.   This campaign involved multiple callers each playing a part in a well-planned and scripted series of false representations.

59.   This campaign and the false representations used in it were intentional, and not the result of any mistake or inadvertence.

60.   In early March 2012, Plaintiff received a telephone call from an agent of the Defendants which he answered.

61.   This first telephone collector [hereinafter the "FAKE COURIER"] was working for and under the direction of the Defendants.

62.   As part of their pre-planned scheme to make false, misleading and deceptive representations, the FAKE COURIER falsely represented that she was a courier or process server that was in Plaintiff's area.

63.   The FAKE COURIER was not near Plaintiff but was in fact calling from Defendants' offices in Amherst, New York.

64.   The FAKE COURIER falsely represented that she wanted to make arrangements to meet personally with Plaintiff in order to deliver legal papers to him.

65.   To further the false impression Defendants' wished to create, the FAKE COURIER asked to confirm Plaintiff's address and asked to set at time later that day for her to meet Plaintiff.

66.   The FAKE COURIER falsely stated that she had a document which she called a "certified notice of intent" (or words to that effect) which she needed to hand to Plaintiff.

67.   The FAKE COURIER gave Plaintiff a telephone number to Defendants' business location in Amherst, New York, and a six digit file number.

68.   The FAKE COURIER encouraged Plaintiff to call Defendants' number to resolve this matter.

69.   The FAKE COURIER said that this was Plaintiff's "final notification," or words to that effect.

70.   The FAKE COURIER falsely stated that if Plaintiff refused to sign for the document that it would have adverse consequences.

71.   The FAKE COURIER falsely stated that documents would be sent to Plaintiff's "county," which Plaintiff interpreted as a court or government office.

72.   The FAKE COURIER implied that the delivery of the documents would happen in front of a witness, which Plaintiff interpreted to mean a neighbor or co-worker.

73.   As a result of the initial call from the FAKE COURIER, Plaintiff called Defendants' number which had been given to him by the FAKE COURIER.

74.   When Plaintiff called in, he was routed to one of Defendants' telephone collectors [hereinafter the "CLOSER"] who played the pre-planned second role in Defendants' well scripted series of false representations.

75.   The CLOSER sought to coerce Plaintiff to pay a debt.

76.    The CLOSER falsely threatened Plaintiff that suit would be filed if he did not pay by the end of the day.

77.    The Defendants' pre-planned scheme to make false, misleading and deceptive representations continued when, after Plaintiff had spoken with CLOSER, Plaintiff received another telephone communication from an agent of the Defendants playing the "FAKE COURIER" role. [Hereinafter, referred to as "FAKE COURIER II."]

78.    FAKE COURIER II falsely stated that she was the "private courier for [Plaintiff's] area," or words to that effect.

79.    FAKE COURIER II stated that she wanted to confirm Plaintiff's address.

80.    FAKE COURIER II falsely stated that she had a "certified notice of intent," or words to that effect to serve on Plaintiff.

81.    FAKE COURIER II falsely stated a time that she intended to go by Plaintiff's place of work.

82.    FAKE COURIER II falsely stated that Plaintiff will need to display a photo id to her when she arrived.

83.    FAKE COURIER II provided a telephone number to Defendants' business for him to call with any questions.

84.   FAKE COURIER II provided Plaintiff with a six digit "file number," or words to that effect.

85.   FAKE COURIER II falsely stated that this was her final notice before she would come to the Plaintiff's place of employment.

86.   FAKE COURIER II encouraged Plaintiff to call Defendants immediately.

87.   FAKE COURIER II falsely stated that she will mark the Plaintiff as a "refusal to sign" if he was not available when she arrived.

88.   FAKE COURIER II falsely stated that "documents will be sent to the county for further proceedings," or words to that effect.

89.   After the call by FAKE COURIER II, Plaintiff again called into the number provided.

90.   Plaintiff's call was routed to another of Defendants' agents which played the role of "CLOSER." [Hereinafter referred to as CLOSER II.]

91.   CLOSER II continued the pre-planned and well-scripted campaign of false representations.

92.   CLOSER II sought to collect the amount of $1,534.62 from Plaintiff.

93.   CLOSER II persistently used the word "pending" when describing the status of the debt, falsely imply the pendency of a court case.

94.   CLOSER II asked Plaintiff to pay "voluntary restitution," or words to that effect, and threatened that if Defendants did not receive the amount, they would "present it," or words to that effect, falsely implying presentation to a court.

95.   CLOSER II also reinforced the false representations of FAKE COURIER and FAKE COURIER II by stating that Plaintiff will "be served shortly," or words to that effect.

96.   CLOSER II falsely stated to Plaintiff that once you are served," or words to that effect, then you will "go to court," or words to that effect.

97.   All representations of Defendants threatening "to go to court," or words to that effect, are false inasmuch as Defendants had and have no intention of pursuing any proceeding in court.

98.   In furtherance of Defendants' pre-planned campaign to create the false impression that litigation was imminent, CLOSER II made a series of false statements to Plaintiff, which include:

99.        That Plaintiff would bear the "burden of proof," or words to that effect, at trial;

100.        That Plaintiff would not be able to carry his burden of proof at trial;

101.    That Defendants would be able to get substantial evidence to prove their case;

102.    That Plaintiff would not be able to bankrupt against the Defendants' claimed debt; and

103.    That the case against Plaintiff was "open and shut."

104.    CLOSER II falsely stated that Plaintiff owed the amount of $1,534.62.

105.    CLOSER II falsely stated that if Defendants' claim went to court that the amount claimed would be increased by interest, late fees, court costs, registration costs with Fulton County, courier costs and attorneys fees.

106.    CLOSER II stated that the debt accrued interest at 18.5 percent biweekly.

107.    CLOSER II falsely stated that if the Defendants' claim went to court, that the amount of the judgment against Plaintiff would be $5,648.27.

108.    CLOSER II stated that he worked for "CSR."

109.    CLOSER II stated that "Chebat Management Group" owned the debt and acquired the debt from National Credit Adjusters.

110.    CLOSER II stated that "Chebat Management Group" is the business that "CSR" worked for.

111.    The language scripted by Defendants for the calls by the FAKE COURIER, FAKE COURIER II, CLOSER and CLOSER II was intended to create in

the minds of typical consumers (and even more so in the minds of least-sophisticated consumers) a false sense of urgency, a false belief that there is impending court activity, and a false belief that the delivery of the FAKE COURIERs' document would embarrass the Plaintiff in front of neighbors or co-workers.

112. In or about June 2012, CHEBAT and six of his business entities (including CHECK SYSTEMS) entered into an agreement with the New York Attorney General in which CHEBAT agreed that his employees would no longer falsely represent to consumers that they were process servers and were about to serve consumers with legal process.

113. In none of the communications from Defendants, did the Defendants provide the notices required by 15 U.S.C. section 1692e(11).

114. Defendants did not send the written notices required by 15 U.S.C. section 1692g.

115. At all times pertinent hereto, the conduct of all the Defendants, as well as that of their agents, servants and/or employees, was in malicious, intentional, willful, reckless, grossly negligent and/or negligent disregard for federal and state laws and the rights of the Plaintiff herein.

116. Defendants do not maintain an office in the State of Georgia.

117.  Defendants do not keep assets in the State of Georgia.

118.  All conditions precedent to bring this action have occurred.

119.  The actions of the Defendants have caused Plaintiff to suffer actual
damages.

120.  Plaintiff's actual damages include emotional distress due to the worry,
concern, anxiety, and uncertainty as to future events induced by Defendants'
actions, and the time lost in dealing Defendants' abusive collection activity.

## CAUSES OF ACTION

## COUNT ONE: VIOLATIONS OF THE FDCPA

121.  The Defendants violations of the FDCPA include, but are not limited to, the
following:

122.       Engaging in conduct the natural consequences of which is to
harass, oppress, or abuse any person in connection with the
collection of a debt, in violation of 15 U.S.C. § 1692d;

123.       The use of any false, deceptive, or misleading representations
or means in connection with the collection of any debt, in
violation of 15 U.S.C. § 1692e;

124.     Falsely representing the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A);

125.     Falsely threatening to take action that cannot legally be taken or that is not intended to be taken, in violation of 15 U.S.C. § 1692e(5);

126.     The use of any false representations or deceptive means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692e(10);

127.     The failure to provide the mandatory disclosures required by 15 U.S.C. § 1692e(11);

128.     The use of any business, company, or organization name other than the true name of the debt collector's business, in violation of 15 U.S.C. § 1692e(14);

129.     The use of unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692f;

130.     Attempting to collect amounts which are not owed, in violation of 15 U.S.C. § 1692f(1); and

131.     The failure to provide the written mandatory disclosures required by 15 U.S.C. § 1692g.

132.   As a result of the above violations of the FDCPA, the Defendants are liable to Plaintiff for statutory damages, actual damages and attorney's fees and costs.

## COUNT TWO: VIOLATIONS OF THE GaFBPA

133.   The Defendants' actions constitute violations of Georgia's Fair Business Practices Act, including but not limited to, the use of unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce.

134.   The conduct of the Defendants are a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, said Defendants are liable to the Plaintiff for the full amount of actual, treble and exemplary damages, along with the attorneys' fees and the costs of litigation.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT JUDGMENT BE ENTERED AGAINST DEFENDANTS AND IN FAVOR OF PLAINTIFF, AS FOLLOWS:

a)     That PLAINTIFF be awarded statutory, actual, treble and exemplary

       damages;

b)     That PLAINTIFF be awarded costs and the expenses of litigation

       including a reasonable attorney fee pursuant to 15 U.S.C. § 1692k(a)(3)

       and O.C.G.A. § 10-1-399; and

c)     Such other and further relief as may be necessary, just and proper,

       including but not limited to injunctive relief.

Respectfully submitted,

                      **SKAAR & FEAGLE, LLP**

            by:     s/ James M. Feagle
                    James M. Feagle
                    Georgia Bar No. 256916
                    jimfeagle@aol.com
                    108 East Ponce de Leon Avenue
                    Suite 204
                    Decatur, GA 30030
                    404 / 373-1970
                    404 / 601-1855 fax


                    Kris Skaar
                    Georgia Bar No. 649610
                    krisskaar@aol.com
                    Justin T. Holcombe
                    Georgia Bar No. 552100
                    jholcombe@skaarandfeagle.com
                    P.O. Box 1478
                    331 Washington Ave.

Marietta, GA 30061-1478
770 / 427-5600
404 / 601-1855 fax